```
     k1l2SamS kjc

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4            v.                            18 Cr. 259(PKC)

 5   KYRYLO SAMOILENKO,

 6                Defendant.

 7   ------------------------------x       Sentence

 8                                         January 21, 2020
                                           2:50 p.m.
 9

10   Before:

11                    HON. P. KEVIN CASTEL,

12                                         District Judge

13

14
                            APPEARANCES
15
     GEOFFREY S. BERMAN
16        United States Attorney for the
          Southern District of New York
17   BY:  ABIGAIL S. KURLAND
          Assistant United States Attorney
18

19   ALAN M. NELSON
          Attorney for Defendant
20

21   Also Present:

22   Special Agent Bruce Turpin, FBI

23

24

25
```

1           (Case called)
2           THE DEPUTY CLERK:  For the government.
3           MS. KURLAND:  Good afternoon, your Honor.  Abigail
4    Kurland for the government.  I'm joined by F.B.I. Special Agent
5    Bruce Turpin.  I'm here on behalf of my colleague Jonathan
6    Rebold, who had a last-minute family emergency.
7           THE COURT:  So I understand.  Good to see you again,
8    Ms. Kurland.
9           MS. KURLAND:  Thank you, your Honor.
10          THE COURT:  And for the defendant.
11          MR. NELSON:  Good afternoon, your Honor.  Alan Nelson
12   for Mr. Samoilenko.  Mr. Samoilenko is standing to my right.
13          THE COURT:  Good to see you Mr. Nelson, and same to
14   you, Mr. Samoilenko.
15          So let me go through what I have, and the question
16   will be whether I have what I should have.
17          I have a presentence report, recommendation, and
18   addendum revised by probation on December 19, 2019.
19          I have a sentencing memorandum prepared by Mr. Nelson
20   and submitted on or about January 11, which helpfully annexes a
21   number of letters and also a certificate regarding
22   Mr. Semoilenko.
23          I have a letter from the government dated January 6,
24   2020, which outlines the defendant's cooperation.
25          I have a notice of intent to request judicial removal

1   with the factual allegations in support, and it's been signed

2   by the defendant and his attorney, and I have a concurrence

3   from the U.S. Immigration and Customs Enforcement.  I have an

4   order of judicial removal, and I have a preliminary order of

5   forfeiture.

6           Do I have everything I should have in this case?

7           MS. KURLAND:  Yes, your Honor.

8           MR. NELSON:  Yes, your Honor.

9           THE COURT:  Has the defendant read, reviewed, and

10  discussed with you the presentence report, recommendation, and

11  addendum?

12          MR. NELSON:  He has, your Honor.

13          THE COURT:  Does the defendant have any objections to

14  the facts set forth in the presentence report?

15          MR. NELSON:  No.

16          THE COURT:  Does the defendant have any objection to

17  the guideline calculation set forth in the presentence report?

18          MR. NELSON:  No.

19          THE COURT:  All right.

20          Does the government have any objections to the facts

21  set forth in the presentence report?

22          MS. KURLAND:  No, your Honor.

23          THE COURT:  Any objection to the guideline

24  calculation?

25          MS. KURLAND:  No, your Honor.

1          THE COURT:  Mr. Nelson, one other question.  Any
2     objections to the facts set forth in the government's letter of
3     January 6, 2020?
4          MR. NELSON:  No, Judge.
5          THE COURT:  I adopt as my findings of facts the facts
6     set forth in the presentence report supplemented by the
7     government's letter of January 6, 2020.  Further, I find that
8     the guidelines are correctly calculated and that defendant is
9     in total offense level 25, criminal history category I, and
10    faces a guideline range of 60 to 71 months plus 24 months
11    consecutive on Count Two.
12         I understand the government moves pursuant to Section
13    3553(e) that the defendant be sentenced in light of the factors
14    set forth in Section 5K1.1 of the guidelines, is that right,
15    Ms. Kurland.
16         MS. KURLAND:  Yes, your Honor.
17         THE COURT:  And without objection, that application is
18    granted.
19         MR. NELSON:  Judge, just for the record, I believe
20    that the court might have misspoke.  The guideline range
21    actually is 57 to 71 months, not 60 to 71 months, plus the 24
22    months consecutive under the aggravated identity theft.
23         THE COURT:  All right.  Here is where I am.  I am on
24    page 25 of the presentence report, and it has a total offense
25    level of 25, criminal history category I, and the range, which

I mentioned.  Let me just look at the sentencing table to see whether it was correctly transcribed.  It looks like it was not correctly transcribed, and it looks like you are correct.

So the recommendation page of the PSR is in error in saying 60 to 71 months on Counts One and Three.  It should read 57 to 71 months.

Is that correct, Mr. Nelson?

MR. NELSON:  Yes, Judge.

THE COURT:  And Ms. Kurland, do you concur?

MS. KURLAND:  Yes.

THE COURT:  All right.  So that is the range, and I thank you, Mr. Nelson, for pointing that out to my attention.

With that, Mr. Nelson, I will give you an opportunity to speak on behalf of the defendant.

MR. NELSON:  Thank you, your Honor.

Your Honor, before speaking and addressing the government's motion under 5K1.1, which of course we would join in, and the 3553 factors, I want to reiterate two points that I had raised in my sentencing memorandum.

The first is that I would submit that the government, absent Mr. Semoilenko's candor, would not have been able to bring the narcotics charge against him, and that increases his guideline by two levels once the grouping rules are applied.

In addition, I would submit that, as it relates to the aggravated identity theft, Count One, the government might have

had some difficulty proving that count absent his cooperation; and, second, other than Mr. Stasiv, none of the other defendants in the case were required to enter a plea of guilty to that count.  And when I first began representing Mr. Semoilenko and prior to entering into the cooperation agreement, I had requested a *Pimentel* letter for purposes of representing alternatives to my client, and in the *Pimentel* letter it did not include an aggravated identity theft charge.

I bring that to the court's attention because I submit it would be unfair to punish Mr. Semoilenko for his candor which increases his sentencing exposure and, in essence, what it does is it increases his level to a range of 46 to 57 months -- I withdraw that, your Honor, 57 to 71 months that we had just discussed, and I would submit that his level really should be considered as level 23, which would be a 46- to 57-month range.

The probation department is recommending a sentence, based upon the government's motion, of 36 months' imprisonment. I had done the calculations and, with credit for time served and good-time credit, were the court to sentence the defendant at the recommendation of probation to 36 months' imprisonment, he would have seven months left to serve in Bureau of Prisons custody as he sits here today.

Which leads me to the second point, and that is that, despite having entered the order of removal, he will not be

1    removed immediately.  I spoke with immigration counsel, Mr. Kai
2    De Graaf, who I deal with regularly, on Friday to find out how
3    things are, in essence, turning out in the New York area with
4    judicial orders already signed, and the backlog is about two to
5    four months, and this is with a judicial order, where there is
6    a complete waiver of all proceedings.
7            So I bring it to the court's attention because, were
8    the court to sentence my client to time served, he would still
9    serve another at least three months imprisonment, but it would
10   be in an ICE facility, probably in the lovely facilities in
11   Hudson County, in New Jersey, as opposed to if he had been a
12   United States citizen and was being sentenced, he would be
13   serving one half of that period of time in either a halfway
14   house or home confinement under 3585 of the United States Code.
15   And I think that's an important factor for the court to
16   consider in determining the appropriate sentence to impose.
17           We join in the government's motion pursuant to Section
18   5K1.1.  Mr. Semoilenko's cooperation was extensive, immediate,
19   and complete.  This court had the opportunity to observe him
20   testify for approximately three days during the course of the
21   trial.
22           Having testified at the trial, in addition to being
23   instrumental in securing the conviction of Mr. Stasiv, he was
24   also instrumental in the government acquiring guilty pleas from
25   each of the other coconspirators in this case.

Significantly, because he shall be returned to the Ukraine, the knowledge of his coconspirators and their relatives and associates that he cooperated in this case is rather well known in the Ukraine and, as a consequence, it places he and his family in the Ukraine in danger.  And it is somewhat different in his status than in the typical cooperation situation because here the government isn't in a position to be able to provide appropriate protection for Mr. Semoilenko and his family once he returns to the Ukraine. So I ask the court to consider that in determining the appropriate sentence to impose.

In evaluating the 3553 factors, Mr. Semoilenko is extremely remorseful for his actions.  He destroyed his marriage, even though his wife very much loves him to this last moment.  He is well aware of the financial cost that he caused to all of the various victims in this case and how much his involvement in this case and his specialized skills assisted in that taking place and has been extremely remorseful from the day I met him when I took over for retained counsel in the case.  He ruined his own opportunities to be able to reside here in the United States, with the type of educational background he had, and he has placed himself and his family in severe danger by these actions.

His remorse has been shown very clearly by his complete and total candor and his cooperation in this

1   investigation and, on the flip side of the coin, despite all
2   the errors he has made, given his educational background, with
3   a master's degree in finance, his extensive work history in the
4   Ukraine and his multilingual skills, he has both a promising
5   future and literally no opportunity to be able to return to the
6   type of fraudulent conduct he had engaged in here as a result
7   of his cooperation.
8           So we ask the court to take all of those factors into
9   consideration, and we would urge the court to sentence
10  Mr. Semoilenko to a period of time served.
11          Thank you, your Honor.
12          THE COURT:  Thank you, Mr. Nelson.
13          Mr. Semoilenko, this is your opportunity to speak, to
14  bring to my attention any facts or circumstances that you
15  believe I should take account of.  If there is anything you
16  wish to say, this is the time to say it.
17          THE DEFENDANT:  Yes, your Honor.
18          Honestly I'm speechless.  I'm nervous.  I've never
19  been in a position like this, like I'm in right now.  A lot of
20  words have been said already, so I will try to be brief.
21          First and most, I want to apologize.  I want to
22  apologize to all people whom I caused any troubles, any
23  financial issues, any family issues through all lives I have
24  endangered and so forth.  I want to apologize to you and to
25  government for all the time that I have taken from you for

1    actions that I did.
2             I totally accept responsibility for everything that I
3    did.  I will never come back to the life like that, because
4    what I have been through through the last two years totally
5    changed me, totally changed my life.  My marriage is destroyed,
6    as Mr. Nelson said already.  My wife left me.  I will be
7    deported from the United States.  I will never be able, most
8    probably, to come back to this country.  I will definitely
9    never live the same life as I did before.
10            I will try to improve myself even more than I did
11   during last two years which were also really helpful, in my
12   opinion, for me, because I became more religious person, I
13   became more book smart person, I read more, I educated myself
14   more, and so forth.
15            I don't know what to say else, your Honor.  The most
16   important thing, I'm really sorry for everything that I have
17   done.
18            Thank you.
19            THE COURT:  Thank you, Mr. Semoilenko.
20            Is there anything the government wishes to add from
21   its letter of January 6?
22            MS. KURLAND:  Yes, your Honor.
23            Briefly, I spoke to Mr. Rebold this morning, who
24   caught me up on the case, and I want to start by saying that
25   the crime here is not insignificant.  It was a serious crime

1  that was sophisticated.  It involved multiple players that
2  spanned the United States and even overseas, and it had many
3  different aspects to it, from the check cashing scheme to the
4  hotel fraud scheme.  So the nature and circumstances and
5  seriousness of the conduct are something that the court should
6  also seriously consider, as I'm sure the court will.
7           And that has to be balanced against the substantial
8  assistance that the defendant has given the government, which
9  thankfully the court is well aware of, having presided over
10 this trial.  Some things that Mr. Rebold wanted me to
11 underscore and remind the court about was that the defendant's
12 cooperation was nearly immediate.  As soon as he was arrested,
13 he gave a statement, I believe it was in Virginia, and then
14 began proffering with the government as soon as he was brought
15 into the Southern District of New York.  Because of his
16 cooperation, several other defendants in the case pled guilty.
17 And because of his credible testimony, the government prevailed
18 at trial, including on a significant aggravated identity theft
19 count.
20          During the trial and during other court appearances,
21 it's been reported that codefendants made threatening gestures
22 to the defendant, so his safety is something that he is rightly
23 concerned about, and that is also something that the court
24 should consider when sentencing him.
25          For all of those reasons -- I should also mention,

1  excuse me, that the defendant consented to his phone being
2  searched and opened the phone for us and, as the court is well
3  aware, even if we had probable cause and a judicial warrant,
4  sometimes, oftentimes, we can't get into certain phones, and
5  the defendant opened his phone to the government here, and my
6  understanding is that it provided a wealth of information and
7  corroborated his testimony, and I'm sure it was powerful
8  independent evidence for the jury to consider.
9  　　　　　So for all of those reasons, the defendant has earned
10  his 5K letter, as reflected in Mr. Rebold's submission, and the
11  court should sentence him accordingly.
12  　　　　　THE COURT:  Thank you.
13  　　　　　Mr. Nelson, is there an objection to my entering the
14  order of judicial removal?
15  　　　　　MR. NELSON:  No, your Honor.
16  　　　　　THE COURT:  Is there an objection to my entering the
17  preliminary order of forfeiture money judgment?
18  　　　　　MR. NELSON:  No.
19  　　　　　THE COURT:  Thank you.
20  　　　　　This is the court's statement of reasons for the
21  sentence to be imposed on Kyrylo Samoilenko:
22  　　　　　In sentencing Mr. Semoilenko, I have considered all of
23  the materials that I referenced at the outset, supplemented by
24  the thoughtful comments of Mr. Nelson, the sincere statements
25  of Mr. Semoilenko, and the observations of Ms. Kurland.

1        I have considered each of the factors set forth in
2   Section 3553(a).  I need not recount all that I have
3   considered, but I have considered all of that.
4        And here I have presided at the trial of Marko Stasiv.
5   I observed the testimony of Mr. Semoilenko, which I found to be
6   truthful.
7        I have sentenced thus far I believe it is five
8   defendants in this case -- Mr. Razumovskiy, Mr. Dikler,
9   Mr. Fazlutdinov, Mr. Stasiv, and Mr. Toporov.  So I'm
10  thoroughly familiar with the nature of the check fraud scheme
11  and the hotel loyalty point scheme and scam, and I need not
12  recount it here.
13       The defendant is not a citizen of the United States.
14  He will be deported from the United States to the Ukraine.  He
15  is 29 years of age.  He is a well-educated man and has an
16  advanced degree.  From my recollection it was something like
17  Odessa University or Odessa State University.  So he did not
18  have to commit these crimes, but he did, and he personally
19  received approximately $126,130.94 from the scheme.  And there
20  were real victims.
21       But Mr. Semoilenko set out to make things right by
22  agreeing to cooperate, and his cooperation was timely and
23  helpful, useful, complete, and did in fact put him in some
24  jeopardy.  As a cooperator, a sentence in the neighborhood of a
25  year and a day would be something that I would probably have

k1l2SamS                                                        kjc

considered in this case in the first place and, with the time served, which goes back to, well, it is March 8, 2018, first produced in this district, but he was detained on February 13, 2018 in the Eastern District of Pennsylvania.  So if it was a year and a day, he would already be just about at that mark.

So for all of these circumstances, I conclude that a sentence of time served, with a term of three years' supervised release on each count, to run concurrently, waiver of the fine based on limited assets, limited earning ability, forfeiture of $126,130.94 and restitution of $542,301.64 and a special assessment of $300 is sufficient but not greater than necessary to achieve the purposes of Section 3553(a).

Does the defendant or his counsel have any objection to the court's proposed sentence or the statement of reasons for that sentence?

MR. NELSON:  No, your Honor.

THE COURT:  Same question for the government.

MS. KURLAND:  Judge, the only question that I have is that my understanding is that the restitution in this case -- that the government was hoping to be able to figure out everybody's sentence and then, if the defendant would consent, to have an order imposed 30 days after the last defendant is sentenced so that joint and several liability can be worked out appropriately.

THE COURT:  I think I have gone along with that in

1    other cases.
2             Mr. Nelson, is there any objection from the defendant
3    to my doing that?
4             MR. NELSON:  There is not indeed.  Mr. Rebold had
5    raised this with me earlier today.  I have spoken to
6    Mr. Semoilenko about that, and he consents.
7             THE COURT:  All right.  Okay.  So then I will order
8    that the order of forfeiture be submitted within 30 days --
9    order of restitution be submitted within 30 days of the
10   sentencing of the last defendant in the case.
11            Please stand and I will impose sentence:
12            Kyrylo Samoilenko, it is the judgment of this court
13   that you are hereby remanded to the custody of the United
14   States Bureau of Prisons to be imprisoned for time served.
15            Upon release from imprisonment, you shall be placed on
16   supervised release for three years, with the following terms
17   and conditions:
18            You shall not commit another federal, state, or local
19   crime.
20            You will not and may not unlawfully possess a
21   controlled substance.
22            You must refrain from any unlawful use of a controlled
23   substance and must submit to one drug test within 15 days of
24   release from imprisonment and two periodic drug tests at least
25   thereafter.

1  You must cooperate in the collection of DNA as
2  directed.
3  You must make restitution in accordance with law.
4  You must comply with standard conditions 1 through 12
5  as set forth on pages 28 and 29 of the presentence report.
6  You shall submit your person, any property, residence,
7  vehicle, papers, computer, other electronic communication data
8  storage devices, cloud storage, or media and effects to a
9  search by any United States probation officer and, if needed,
10  with the assistance of any law enforcement.  The search is to
11  be conducted where there is reasonable suspicion concerning
12  violation of a condition of release or unlawful conduct by the
13  person being supervised.  Failure to submit to a search may be
14  grounds for revocation.  You shall warn any other occupants
15  that the premises may be subject to search pursuant to this
16  condition.  Any search shall be conducted at a reasonable time
17  and in a reasonable manner.
18  You shall provide the probation officer with access to
19  any requested financial information.  You must not incur new
20  credit card charges or open additional lines of credit without
21  the approval of the probation officer unless you are in
22  compliance with the installment payment schedule.
23  It is further ordered that you must pay to the United
24  States a special assessment of $300 which shall be due
25  immediately.

         You shall make restitution in accordance with the order that will be entered in this court within 30 days after the last defendant is sentenced.

         You shall forfeit to the United States all right, title, and interest in any and all property used or intended to be used in any manner or part to commit or facilitate the commission of the offense, including but not limited to a sum of U.S. currency representing proceeds traceable to the commission of the offense and specifically the sum of $126,130.94.

         You have the right to appeal the sentence I have imposed on you.  If you cannot afford the cost of an appeal, you may apply for leave to appeal as a poor person.  The time limits for filing a notice of appeal are brief and they are strictly enforced.  If you request, the Clerk of Court will prepare and file a notice of appeal on your behalf immediately.

         Do you understand all that?

         THE DEFENDANT:  Yes, your Honor.

         THE COURT:  All right.  Please be seated.

         The preliminary order of forfeiture money judgment has been signed.  The order of judicial removal has been signed. An order which will be tendered to the marshals indicating that you have been sentenced to time served subject to any detainers that have been lodged by immigration authorities.

         Anything further from the government?

k1l2SamS   kjc

1       MS. KURLAND:  The government would move to dismiss any
2  underlying indictments in the case.
3       THE COURT:  Without objection, that's granted.
4       Anything from the defendant?
5       MR. NELSON:  No, your Honor.  Thank you.
6       THE COURT:  All right.  Mr. Semoilenko, I wish you a
7  very long and prosperous and healthy life.  You have paid
8  dearly for your crimes, and I hope that you go on to live a
9  law-abiding and productive life.
10       THE DEFENDANT:  Thank you.
11       THE COURT:  We are adjourned.
12       MR. NELSON:  Thank you, your Honor.
13                               oOo